

ORDERED in the Southern District of Florida on January 27, 2026.



**Erik P. Kimball**
**United States Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

JARRELL MILLER,

    Debtor.
_____/

JARRELL MILLER,

    Plaintiff,

v.

SALITA PROMOTIONS CORP.
and STAR OF DAVID INC.,

    Defendants.
_____/

Case No. 25-10187-EPK
Chapter 7

Adv. Proc. No. 25-01111-EPK

**ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,
PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM,
AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

    Jarrell Miller, the debtor in the above-captioned chapter 7 case, is a professional boxer. Prior to filing his chapter 7 petition, Mr. Miller and a related entity were parties to a Co-Promotional Rights Agreement (the "Agreement") with defendant Salita Promotions

Corp. ("Salita"). Defendant Star of David Inc. was previously a party to a similar agreement with Mr. Miller. Star of David Inc. and Salita are both controlled by Dmitry Salita.

In this adversary proceeding, Mr. Miller seeks declaratory relief in two counts. He asks the Court to rule that "all of [Salita's] promotional rights to Miller's future bouts have expired and terminated." In support of this request for relief, Mr. Miller argues that the Agreement terminated in its entirety prior to his filing his chapter 7 petition. If the Court determines that the Agreement was not terminated in its entirety prior to the filing of this bankruptcy case, Mr. Miller asks the Court to rule that any remaining aspect of the Agreement was automatically rejected pursuant to 11 U.S.C. § 365(d)(1).

Salita presents a counterclaim, asking the Court to declare that it "possesses the promotional rights to Miller's next professional boxing bout and, at its option, Miller's subsequent two bouts." In support, Salita argues that the Agreement was not terminated prior to Mr. Miller filing his chapter 7 petition and, in spite of rejection of the Agreement under section 365(d)(1), which Salita concedes, Mr. Miller remains bound under certain provisions of the Agreement.

Mr. Miller and the defendants have been parties to several written contracts, including the Agreement, and amendments to those contracts. In their various briefs, the parties restate the history of these contracts and related pre-bankruptcy litigation. Although Mr. Miller's request for relief references several contracts and amendments, there is no argument that any contract other than the Agreement has any bearing on the outcome of this suit.

Mr. Miller included Star of David Inc. as a defendant in this action. Star of David Inc. is not a party to the Agreement. No one has argued that any agreement between Mr. Miller and Star of David Inc. has any impact on the relief requested in this adversary

proceeding.  Based on the allegations in the complaint, the answer and counterclaim, and the briefs filed in connection with dispositive motions now before the Court, Mr. Miller is not entitled to any relief with regard to Star of David Inc. in this adversary proceeding. The Court notes that the counterclaim is presented solely by Salita.

In this order, the Court rules on Mr. Miller's motion for summary judgment on both counts of his complaint [Dkt. No. 40], Mr. Miller's motion to dismiss Salita's counterclaim [Dkt. No. 48], and the defendants' motion for summary judgment on Salita's counterclaim [Dkt. No. 55].  In ruling on these motions, the Court has carefully considered the related briefs, statements of material facts, exhibits, and declarations [Dkt. Nos. 32, 33, 34, 41, 55, 56, 65, 105, 106, 107, 108, 109, and 110].

Federal Rule of Civil Procedure 56(a), made applicable to this matter by Federal Rule of Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).  In considering a motion for summary judgment, the Court must construe all facts and draw all reasonable inferences in the light most favorable to the non-moving party.  *Id.*

The moving party has the burden of establishing that there is an absence of any genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once the moving party meets that burden, the burden shifts to the non-movant, who must present specific facts showing that there exists a genuine dispute of material fact.  *Walker v. Darby*, 911 F.2d 1573, 1576 (11th Cir. 1990) (citation omitted).  "A mere 'scintilla' of evidence supporting the opposing party's

position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Id.* at 1577 (citing *Anderson*, 477 U.S. at 252).

At the summary judgment stage, the Court will not weigh the evidence or find facts; rather, the Court determines only whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must determine, based on "judicial experience and common sense," whether the well-plead facts in the complaint present a plausible claim for relief. *Ashcroft*, 556 U.S. at 679. In making this determination, the Court must accept as true all factual allegations in the complaint. *Id.* at 678. Motions to dismiss are not favored and are rarely granted. *See, e.g., Madison v. Purdy*, 410 F.2d 99, 100 (5th Cir. 1969); *Int'l Erectors, Inc. v. Wilhoit Steel Erectors & Rental Serv.*, 400 F.2d 465, 471 (5th Cir. 1968).

The parties agree that the term of the Agreement, as extended by amendments not relevant here, expired on August 3, 2024. The Agreement contains two provisions relevant to whether Salita had any rights under the Agreement after that date.

Under section 16(a) of the Agreement, for a period of thirty days after expiration or termination of the Agreement, Mr. Miller agreed to "negotiate exclusively and in good faith with [Salita] with respect to [Mr. Miller's] promotional rights and entering into a new exclusive promotional agreement with [Salita]." The exclusive negotiation period ended on September 2, 2024. Mr. Miller and Salita did not enter into a new promotional rights agreement. That triggered section 16(b) of the Agreement.

Section 16(b) of the Agreement provides that for a period of six months after the negotiation period Salita retained the ability to match certain written offers received by Mr. Miller that Mr. Miller wished to accept. It is useful to set out the entirety of section 16(b) here:

> In the event no agreement between SPC and Fighter is reached with respect to a new exclusive promotional agreement by the end of the Exclusive Negotiation Period, Fighter may negotiate with any third party with respect to Fighter's promotional rights; provided, however, that during the period (the "Last Refusal Period") commencing on the expiration of the Exclusive Negotiation Period and ending six (6) months thereafter, Fighter may not enter into any agreement with a third party or parties with respect to Fighter's promotional rights, including, without limitation, promotional agreements, bout agreements or option agreements, without first making to SPC a written offer (containing full details in regard thereto as well as a copy of the actual offer received by Fighter from such third party), which offer shall be irrevocable for at least ten (10) business days after SPC's receipt thereof, to enter into an agreement with SPC therefor on the same Financial Terms (as defined below) offered by or to Fighter to or by said third party or parties. If SPC rejects, or fails to accept, such offer within such 10 business day period, then and only then, shall Fighter be free to enter into such agreement with such third party or parties. If Fighter does not enter into such agreement with said third party or parties within 5 days of the expiration of such 10 business day period, the terms of this Paragraph shall apply to any outstanding, renewed or subsequent offer received or made by Fighter with respect to Fighter's promotional rights. SPC's failure to accept any such offer from Fighter shall not constitute a waiver of SPC's rights of last refusal with respect to any outstanding, renewed or subsequent offers. The parties understand and agree that the term "Financial Terms" only requires SPC to match the economic terms being offered by or to Fighter to or by said third party or parties for Fighter's purses for his bouts and does not require SPC to match any non-economic terms, including, without limitation, title opportunities, fighting on particular dates, fighting more than two times per year, fighting particular opponents, fighting on particular networks, or at particular venues.

Although the parties dispute how to interpret section 16(b), the Court has no difficulty understanding its terms. Because Mr. Miller and Salita had not negotiated a new promotional rights agreement, for a period of six months Mr. Miller's ability to accept certain offers from others was subject to Salita's right to match the financial terms of any such offer. To be clear, Mr. Miller was not required to provide to Salita any and all offers or agreements he received. He was required to provide a third-party offer to Salita only if he

wished to accept it.  Section 16(b) is not limited to promotional rights agreements.  It expressly includes bout agreements and option agreements.

The procedure required by section 16(b) is straightforward.  During the relevant six-month period, if Mr. Miller receives an offer or agreement that he wishes to accept, he must first make a written offer to Salita detailing the third-party offer and including a copy of the offer.  Mr. Miller's written offer to Salita must be irrevocable for a period of ten business days, during which time Salita has the ability to accept Mr. Miller's offer.  If Salita does not accept Mr. Miller's offer during such ten-business-day period, then Mr. Miller must enter into the agreement with the third party within the ensuing five days or Salita's rights reset.  If Salita accepts an offer from Mr. Miller under this provision, Salita is required to match, and is bound by, only the economic terms of the third-party offer.  This explicitly excludes terms relating to "title opportunities, fighting on particular dates, fighting more than two times per year, fighting particular opponents, fighting on particular networks, or at particular venues."

Mr. Miller argues that Salita has the right to match a third-party offer only if the third-party offer remains irrevocable for a period of ten days.  In support, he argues that the phrase "which offer shall be irrevocable" in section 16(b) refers to the third-party offer received by Mr. Miller and not to Mr. Miller's offer to Salita.  The Court does not agree with Mr. Miller's interpretation.

The relevant excerpt is:

> Fighter may not enter into any agreement with a third party or parties with respect to Fighter's promotional rights, including, without limitation, promotional agreements, bout agreements or option agreements, without first making to SPC a written offer (containing full details in regard thereto as well as a copy of the actual offer received by Fighter from such third party), which offer shall be irrevocable for at least ten (10) business days after SPC's receipt thereof, to enter into an agreement with SPC therefor on the same Financial Terms (as defined below) offered by or to Fighter to or by said third party or parties.

The parenthetical in this sentence immediately follows reference to the written offer Mr. Miller must send to Salita if Mr. Miller wishes to accept an offer from another party. The parenthetical details what Mr. Miller must include in his written offer to Salita. Mr. Miller must provide full details about the third-party offer and a copy of the third-party offer. After the parenthetical there is a comma and then the phrase "which offer shall be irrevocable for at least ten (10) business days after [Salita's] receipt thereof." Mr. Miller argues that "which offer" refers to the third-party offer and not to his written offer to Salita. This interpretation is contrary to both the rules of syntax and the overall purpose of section 16(b).

"Words contained within parentheses do not affect the syntax of the rest of the sentence." *Parentheses*, Bryan A. Garner, Garner's Dictionary of Legal Usage (3d ed. 2011), https://premium.oxforddictionaries.com/us/secondary/garner_dict_legal_usage/parentheses (last visited Jan. 27, 2026). "If you removed the material within the parentheses, the sentence would still make perfectly good sense." *Parentheses and brackets*, Oxford Dictionaries, https://premium.oxforddictionaries.com/us/words/parentheses-and-brackets-american (last visited Jan. 27, 2026). If one removes the parenthetical in section 16(b), it is clear that the phrase "which offer shall remain irrevocable" relates back to Mr. Miller's written offer to Salita. It is Mr. Miller's written offer to Salita that must remain irrevocable for the ten-business-day period to permit Salita time to exercise its rights under that provision.

This interpretation aligns with the apparent purpose of section 16(b). The parties agreed that if Mr. Miller did not negotiate a new promotional rights agreement with Salita, and within six months after the negotiation period Mr. Miller wanted to move forward with another party for a single bout, an option agreement, a promotional agreement, or the like, under terms acceptable to Mr. Miller, Salita should have a chance to enter into a similar

agreement with Mr. Miller on the same economic terms.  It is Mr. Miller's desire to accept a particular financial deal that triggers Salita's rights under section 16(b), not whether the third-party offer remains available.

During the period covered by section 16(b), Mr. Miller received an offer from a British promoter for a bout specifying the opponent, date, and location, with a proposed fee of $1 million to be placed in escrow, and providing for two bout options with additional terms.  Mr. Miller wished to accept this offer and his counsel forwarded it to counsel for Salita as required by section 16(b).  Within ten business days after receipt Salita's counsel formally accepted Mr. Miller's offer.  A few days later the British promotor revoked its offer to Mr. Miller.

Mr. Miller argues that the offer he received from the British promoter lacked "full details in regard thereto" as required by section 16(b).  Mr. Miller again misreads that paragraph.  The phrase "full details in regard thereto" relates to Mr. Miller's duty to disclose to Salita the terms of a third-party offer that Mr. Miller wishes to accept.  That language does not establish any minimum of terms in the third-party offer that would trigger Salita's ability to match the financial terms.  Indeed, that Mr. Miller forwarded the British offer to Salita indicates that it contained sufficient terms for Mr. Miller.

Mr. Miller argues that the two bout options referenced in the British offer are not sufficiently clear to permit Salita to match them.  Again, they were sufficiently clear for Mr. Miller to wish to accept the British offer.  Nor does the Court find those provisions confusing.  The British offer included options for two additional bouts with minimum fees of $1.5 million each, subject to further good faith negotiation.

Mr. Miller argues that the British promoter's offer was only a "bout offer" and not a promotional offer and so does not trigger Salita's rights under section 16(b). Yet Salita's right to match under that provision explicitly includes bout agreements.

Mr. Miller complains that Salita's letter matching the British offer does not specify an opponent, location, or date. Section 16(b) does not require Salita to match those terms. The Agreement specifically excuses Salita from matching "title opportunities, fighting on particular dates, fighting more than two times per year, fighting particular opponents, fighting on particular networks, or at particular venues."

Mr. Miller argues that because the British promoter's offer was revoked Salita could not match it under paragraph 16(b). As discussed above, that the third-party offer was revoked has no impact on Salita's right to match an offer that Mr. Miller wanted to accept and that he sent to Salita. It was Mr. Miller's desire to accept the British offer and his sending it to Salita that triggered Salita's ability to match the financial terms of the offer.

That counsel for Mr. Miller and Salita argued at the time about whether paragraph 16(b) of the Agreement applied under the circumstances has no bearing on the Court's ruling here. In determining the pending motions for summary judgment, the Court considers only the evidence properly before it in light of the clear text of the Agreement.

Based on the foregoing analysis of the Agreement and undisputed evidence before the Court at summary judgment, the Court determines that Salita properly matched the British offer tendered to it by Mr. Miller. When Mr. Miller filed his bankruptcy petition on January 9, 2025, the Agreement remained executory to the extent of the parties' obligations arising from Salita's timely match under section 16(b).

Salita argues that Mr. Miller anticipatorily breached the Agreement by declaring that he would never fight for Salita. Mr. Miller complains that Salita has not tendered a specific bout or escrowed a fee and so Salita is in breach of the Agreement. These and similar arguments have no impact on the Court's determination that certain of the parties' obligations under the Agreement remained executory on the petition date. It is possible

these arguments impact the claim Salita could have in Mr. Miller's chapter 7 case as a result of rejection of the Agreement.

To the extent of the parties' obligations arising from Salita's timely match of the British offer under section 16(b), the Agreement was subject to assumption or rejection under 11 U.S.C. § 365.  Mr. Miller and Salita agree that, to the extent executory, the Agreement was automatically rejected 60 days later under 11 U.S.C. § 365(d)(1).  The effective date of rejection was March 10, 2025.

In light of the Court's analysis to this point, Mr. Miller's motion for summary judgment [Dkt. No. 40] will be denied as to count I and granted as to count II, and Mr. Miller's motion to dismiss Salita's counterclaim [Dkt. No. 48] will be denied.

In the counterclaim, Salita seeks "declaratory judgment finding and determining that [Salita] possesses the promotional rights to Miller's next professional boxing bout and, at its option, Miller's subsequent two bouts."  Salita argues that in spite of rejection under section 365, the Agreement, to the extent extended by Salita's match of the British offer, has not been terminated and remains binding on Mr. Miller.  Salita apparently believes its rights are not subject to discharge in Mr. Miller's chapter 7 case.[1]  In Salita's view, Mr. Miller is not entitled to fight any bout until Mr. Miller has fought one bout, and potentially two more, promoted by Salita.

For purposes of the motion for summary judgment on Salita's counterclaim, it is not necessary for the Court to determine whether Salita's rights as a result of matching the British offer under section 16(b) are subject to discharge.  In any case, the Agreement, taken as a whole, does not support the specific declaratory relief requested in Salita's

---

[1] In the briefs before the Court on the present motions, Salita does not explicitly argue that its rights as a result of matching the British offer under section 16(b) are not subject to discharge in Mr. Miller's chapter 7 case.  However, to reach the declaratory judgment requested in Salita's counterclaim, the Court would need to determine that issue.

counterclaim. There is nothing in the Agreement or in the financial terms of the British offer matched by Salita that require Mr. Miller to fight his next bout, and potentially two additional bouts in succession, with Salita as promoter.

Section 3 of the Agreement defines the term of the Agreement. Two amendments previously extended that term, but the parties agree that Mr. Miller satisfied those amendments and the term of the agreement ended. They agree that at that point sections 16(a) and 16(b) applied.

Section 16(a) explicitly applies only after the term of the Agreement has ended. The parties' rights and obligations under section 16(b) follow from section 16(a). Nothing in those provisions extends the term of the Agreement. The parties' rights and obligations flowing from section 16(b) are limited to the economic terms of any offer sent by Mr. Miller to Salita that Salita accepted. Those economic terms specifically exclude terms regarding "fighting on particular dates." Even if a third-party offer accepted by Salita under section 16(b) contained timing related provisions, such as requiring that bouts happen in a particular order (and the British offer had no such provision), Salita could not enforce those provisions under the explicit language of section 16(b).

Nor is Mr. Miller bound by the exclusivity provision in paragraph 10 of the Agreement. That provision explicitly states that Mr. Miller is bound by it only during the term of the Agreement. As discussed above, section 3 defines the term of the Agreement. The parties agree that the term came to an end, thus triggering sections 16(a) and 16(b). Nothing in those provisions extends the term of the Agreement. By its own language, the exclusivity provision of section 10 no longer applies.

After the end of the six-month period under section 16(b) of the Agreement, meaning after March 2, 2025, Mr. Miller is no longer required to bring any third-party offers to Salita before Mr. Miller may accept them. So long as it does not somehow conflict with the

economic terms of the one offer that Mr. Miller sent to Salita under section 16(b) and that Salita timely accepted, Mr. Miller may accept any third-party offer after March 2, 2025 without bringing it first to Salita.  Going forward, Mr. Miller may participate in any fights that he wishes.  There is nothing limiting Mr. Miller's "next" fight, or the two fights following that one, to fights promoted by Salita.  Thus, Salita is not entitled to the specific declaratory judgment requested in its counterclaim and Salita's motion for summary judgment will be denied.

In light of the foregoing, the Court ORDERS and ADJUDGES as follows:

1. *Plaintiff's Renewed Motion for Final Summary Judgment* [Dkt. No. 40] is GRANTED IN PART as follows: the motion is DENIED as to count I of the complaint and GRANTED as to count II of the complaint.

2. *Plaintiff Jarrell Miller's Motion to Dismiss Counterclaim of Salita Promotions Corp. for Failure to State a Claim Upon Which Relief Can Be Granted Pursuant to FRCP 12(b)(6)* [Dkt. No. 48] is DENIED.

3. Defendant Salita Promotions Corp.'s motion for summary judgment on its counterclaim, contained in the *Defendants' Response in Opposition to Plaintiff's Renewed Motion for Final Summary Judgment and Cross-Motion for Summary Judgment* [Dkt. No. 55], is DENIED.

###

Copy furnished to:
Geoffrey S. Aaronson, Esq.

*Geoffrey S. Aaronson, Esq. is directed to serve a conformed copy of this Order on all appropriate parties and to file a certificate of service with the court.*